Richard SHANNON and Joan Shannon, Plaintiff,

v.

LAKE GROVE CENTERS, INC. and AMF, Inc., Defendants.

No. CV 99–3164.

United States District Court, E.D. New York.

Oct. 30, 2000.

Law Offices of Neil H. Greenberg, by Neil H. Greenberg, Westbury, NY, for plaintiffs.

Law Offices of Michael E. Pressman, by Steven H. Cohen, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this diversity case Plaintiffs seek damages arising from an on the job accident suffered by Plaintiff Richard Shannon. Richard Shannon ("Plaintiff" or "Shannon") seeks damages for shoulder and knee injuries. His wife, Joan Shannon, seeks damages for loss of consortium. Plaintiffs set forth claims in common law negligence as well as claims pursuant to the New York Labor Law. Presently before the court is the motion of defendants Lake Grove Centers, Inc. and AMF, Inc. (collectively "Defendant") for summary judgment. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

The deposition testimony and other documents submitted in support of and in opposition to the motion reveal the following facts. At all relevant times, Shannon was employed as a Heating Ventilation and Air Conditioning ("HVAC") mechanic by Dynaire Service Corp. ("Dynaire"). Prior

to June 15, 1998, Dynaire was called to inspect a failing air conditioning unit located at the AMF Syosset Bowling Lanes, located in Syosset, New York ("Syosset Lanes").[1]

Responding to the call from Syosset Lanes was Plaintiff, Malvia Persaud (a co-worker) and John Conner (Plaintiff's supervisor). Plaintiff was the first to arrive at Syosset Lanes on June 15, 1998, at approximately 8:00 A.M. He was shortly thereafter joined by Persaud. Last to arrive was Conner. The three workers described their contact with employees of Syosset Lanes as limited to being directed to the entrance to the roof. Prior to arriving at the job site, the workers were aware that the job involved removing a section of the blower unit from an air conditioner located on the roof of Syosset Lanes and transporting the unit to Dynaire for repair.

Shannon's accident occurred after the workers had been on the roof for approximately two hours. At that time, Shannon and Conner were carrying the blower unit to a lower roof so that it could be lowered from the building. The unit being handled by the two men was between six and seven feet long and weighed over 200 pounds. Conner and Shannon were walking, side by side, moving the unit nearer to the lower roof. Persaud, who was continuing work on the air conditioner, was watching the two men and witnessed Shannon's accident.

The testimony of Shannon, Persaud and Conner is in agreement that Shannon was injured when he slipped on the roof while carrying the unit. Shannon did not fall from the roof; his left foot slipped and he fell on the roof. He was taken, by Persaud, to the emergency room at Winthrop University Hospital. Shannon's subsequent treatment and medical condition is not relevant to the present motion and will not be discussed herein. Suffice it to say that Shannon suffered injuries to his shoulder and knee, both of which required surgery.

There is conflicting testimony regarding the precise weather at the time of the accident as well as the condition of the roof. Shannon testified that the roof was dry and the weather was overcast upon his arrival at the job site. He stated that the weather remained overcast, with no precipitation until five to ten minutes before the accident, when it began to drizzle. Both Conner and Persaud testified that it was raining the entire morning. According to Conner, Shannon slipped on the wet roof. Shannon and Persaud described a repaired portion of the roof as the spot on which Shannon slipped. Both described that portion of the roof as having been repaired with material different from the surrounding roofing material. Persaud described the patched roof area as covered with a rubber type of material that was smooth and without grip. He stated that the patched area of the roof was rectangular in shape, approximately twenty feet long and four feet wide.

## II. *The Complaint and Motion*

As noted above, Shannon alleges statutory claims as well as a claim in common law negligence against Defendant, the owner of the premises where the accident occurred. Plaintiff's claim pursuant to Section 200 of the New York State Labor Law (the "Labor Law") is for all intents and purposes, identical to a common law claim for negligence. *see* Labor Law § 200(1); *Rizzuto v. L.A. Wenger Contracting Co., Inc.,* 91 N.Y.2d 343, 352, 670 N.Y.S.2d 816, 821, 693 N.E.2d 1068 (1998). Plaintiff's other statutory claims are stated pursuant to Sections 240 and 241 of the Labor Law. These statutes impose liability on owners for workers' injuries. They differ from typical common law claims in that they do not require a showing of the

1. The papers before the court indicate that Defendant is properly referred to as "AMF Bowling Centers, Inc., d/b/a/ AMF Syosset Lanes." The corporate identity of Defendant, however, is not relevant to disposition of the present motion.

owner's control or supervision over a job site.

Defendant moves for summary judgment on all claims. Judgment is sought on the claim pursuant to Section 240 of the Labor Law ("Section 240") on the ground that the work that Shannon was performing on the date of the accident does not fall within the class of activities protected by this statute. Judgment is sought with respect to the claim pursuant to Section 241 of the Labor Law ("Section 241") on the ground that Plaintiff has not alleged, as he must, the violation of a relevant specific regulation of the Department of Labor. Finally, judgment is sought on the claim pursuant to Section 200 of the Labor Law ("Section 200") and the negligence claim on the ground that Plaintiff can show neither Defendant's control over the work site nor notice of any dangerous condition.

## DISCUSSION

### I. Standard For Grant of Summary Judgment

A motion for summary judgment is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential elements of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

### II. Section 240 of the Labor Law

#### A. Legal Principles

Section 240 of the Labor Law ("Section 240") is the current enactment of New York State statutory laws aimed at protecting workers from the dangers of elevation-related risks. *Joblon v. Solow,* 91 N.Y.2d 457, 462–63, 672 N.Y.S.2d 286, 289, 695 N.E.2d 237 (1998); *Ross v. Curtis–Palmer Hydro–Electric Co.,* 81 N.Y.2d 494, 500, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993). Section 240 requires that appropriate scaffolding be erected to protect workers involved in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building." N.Y. Labor L. § 240(1).

The statute is one of strict liability and imposes liability on contractors as well as owners and their agents without regard to notice of any defective condition. *Rocovich v. Consolidated Edison Co.,* 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 221, 583 N.E.2d 932 (1991); *see Zimmer v. Chemung County Performing Arts, Inc.,* 65 N.Y.2d 513, 522, 493 N.Y.S.2d 102, 106, 482 N.E.2d 898 (1985). To prevail on a claim brought pursuant to Section 240, Plaintiff must show a failure to provide the protection set forth in the statute and that such failure was the proximate cause of the accident. *Felker v. Corning, Inc.,* 90 N.Y.2d 219, 221, 660 N.Y.S.2d 349, 351, 682 N.E.2d 950 (1997); *Zimmer,* 65 N.Y.2d at 524, 493 N.Y.S.2d at 107, 482 N.E.2d 898; *Serpe v. Eyris Productions, Inc.,* 243 A.D.2d 375, 376, 663 N.Y.S.2d 542, 544 (1st Dept.1997); *see also Wilson v. City of New York,* 89 F.3d 32, 36 (2d Cir.1996).

A violation of Section 240 will be found only in those cases where the hazard that caused the injury is the particular type of hazard sought to be protected by the statute. *Rocovich,* 78 N.Y.2d at 513, 577 N.Y.S.2d at 221, 583 N.E.2d 932. As set forth by the New York Court of Ap-

peals, the "contemplated hazards" addressed by Section 240 are "those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured." *Rocovich*, 78 N.Y.2d at 514, 577 N.Y.S.2d at 222, 583 N.E.2d 932.

■ Section 240 does not seek to protect workers from "any and all perils that may be connected in some tangential way with the effects of gravity." *Nieves v. Five Boro Air Conditioning & Refrigeration Corp.*, 93 N.Y.2d 914, 915–16, 690 N.Y.S.2d 852, 853, 712 N.E.2d 1219 (1999). If the injury sustained is not the type of harm "typically associated with elevation-related hazards," plaintiff cannot state a claim pursuant to Section 240. *Ross v. Curtis–Palmer*, 81 N.Y.2d at 500, 601 N.Y.S.2d at 52, 618 N.E.2d 82. Put simply, the plaintiff must show that the proper use of one of the devices set forth in Section 240 would have prevented the injury sustained. *Rocovich*, 78 N.Y.2d at 514, 577 N.Y.S.2d at 222, 583 N.E.2d 932.

### B. *Analysis*

■ Shannon claims to have slipped on a slippery patch of the roof of Syosset Lanes while carrying the air conditioner's blower unit. He did not fall from the roof, but landed on its flat surface and suffered injury as a result of the impact. While there is no question that the work Plaintiff was called upon to accomplish on the date of the accident took place in an elevated environment, *i.e.*, a roof, it is equally clear that the type of accident intended to be avoided by the precautions set forth in Section 240 would have had no impact on Plaintiff's accident or injuries. The hazards within the scope of Section 240 are accidents such as "falling from a height or being struck by a falling object that was improperly hoisted or inadequately se-

cured." *Ross v. Curtis–Palmer*, 81 N.Y.2d at 501, 601 N.Y.S.2d at 52, 618 N.E.2d 82. No device listed in Section 240 would have prevented Plaintiff's fall or injury.

Under these circumstances it is clear that Plaintiff's accident is not the type that was intended to be avoided by the safety precautions set forth in Section 240. Accordingly, the court grants Defendant summary judgment on this cause of action and dismisses Plaintiff's claim pursuant to Section 240 of the Labor Law. *Accord Nieves*, 93 N.Y.2d at 916, 690 N.Y.S.2d at 853, 712 N.E.2d 1219 (Section 240 claim dismissed where plaintiff's injury was caused by an "unnoticed or concealed object on the floor" and not by any need for a ladder); *Ross v. Curtis–Palmer*, 81 N.Y.2d at 501, 601 N.Y.S.2d at 53, 618 N.E.2d 82 (Section 240 claim dismissed where plaintiff's injury, back strain, was unrelated to any hazard bringing about a need for scaffolding device).

### III. *Section 241 of the Labor Law*

#### A. *Legal Principles*

■ Like Section 240, Section 241 of the Labor Law imposes liability on owners and general contractors for injuries suffered by workers. Such liability is imposed without the necessity of proving a defendant's notice of a defective condition or control over the work site. *Zimmer*, 65 N.Y.2d at 521–22, 493 N.Y.S.2d at 105, 482 N.E.2d 898. Section 241 protects workers involved in construction, demolition or excavation work. Labor L. § 241. The term "construction" has been broadly construed, in accordance with applicable regulations of the Department of Labor, to include the type of maintenance and repair work that was being conducted by Plaintiff. 12 NYCRR 23–1.4(b)(13) (defining "construction" to include, *inter alia*, repair, maintenance or moving of buildings or other structures); *see Vernieri v. Empire Realty Co.*, 219 A.D.2d 593, 595, 631 N.Y.S.2d 378, 380 (2d Dept.1995).

The first five subsections of Section 241 set forth particular standards of conduct, the violation of which will impose absolute liability on a defendant. *Zimmer*, 65 N.Y.2d at 522, 493 N.Y.S.2d at 106, 482 N.E.2d 898. Like Section 240 of the Labor Law, the first five subsections of Section 241 are self-executing; they provide strict standards of conduct and impose absolute liability for the failure to comply therewith. *Id.*

■ The subsection of Section 241 that is relevant here, however, is subsection 6. That subsection imposes a broadly stated obligation to ensure that work sites are "so constructed ... operated and conducted as to provide reasonable and adequate protection and safety" for workers. N.Y. Labor L. § 241(6). Because Section 241(6) does not set forth particular standards that must be followed, the court must reference outside sources to determine the standard by which the defendant's conduct is to be measured. *Zimmer*, 65 N.Y.2d at 523, 493 N.Y.S.2d at 107, 482 N.E.2d 898; *Saft v. Tishman Constr. Corp. of Manhattan*, 1999 WL 102766 *6 (S.D.N.Y. February 25, 1999). Specifically, to state a claim pursuant to Section 241(6), a plaintiff must allege the violation of a specific rule or regulation promulgated by the Commissioner of the Department of Labor. *Ross v. Curtis–Palmer*, 81 N.Y.2d at 501–02, 601 N.Y.S.2d at 53, 618 N.E.2d 82.

■ Section 241(6) also differs from liability under Section 240 and the first five subsections of Section 241 in terms of the liability imposed. First, violation of a rule or regulation promulgated pursuant to Section 241(6) does not impose absolute liability without regard to fault or negligence, but is merely some evidence of negligence. *Rizzuto v. L.A. Wenger Contracting Co., Inc.*, 91 N.Y.2d 343, 349, 670 N.Y.S.2d 816, 819, 693 N.E.2d 1068 (1998); *Ross v. Curtis–Palmer*, 81 N.Y.2d at 502 n. 4, 601 N.Y.S.2d at 53 n. 4, 618 N.E.2d 82. Additionally, a defendant in a case brought pursuant to Section 241(6) may raise the defense of comparative negligence. *Rizzu-*

*to*, 91 N.Y.2d at 350, 670 N.Y.S.2d at 819, 693 N.E.2d 1068.

As noted, the rule or regulation relied upon to state a claim pursuant to Section 241(6) must be a "specific, positive command" to rise to the level of a duty imposed without regard to supervision or control. *Ross v. Curtis–Palmer*, 81 N.Y.2d at 504, 601 N.Y.S.2d at 49, 618 N.E.2d 82. Where a plaintiff can point to such a provision, failure to comply with that provision constitutes evidence of negligence sufficient to defeat summary judgment and present a claim to a jury. Thereafter, the trier of fact may conclude that plaintiff's injury resulted from negligence and that such negligence was the proximate cause of the injury. These findings would lead to imposition of liability upon a party without the necessity of proving supervision or control. *See Rizzuto*, 91 N.Y.2d at 351, 670 N.Y.S.2d at 820, 693 N.E.2d 1068.

■ Where a plaintiff cannot point to a "specific, positive" command but, instead, relies only on general safety standards set forth in rules or regulations, no Section 241(6) claim is stated. *Rizzuto*, 91 N.Y.2d at 349, 670 N.Y.S.2d at 819, 693 N.E.2d 1068; *Ross v. Curtis–Palmer*, 81 N.Y.2d at 504, 601 N.Y.S.2d at 49, 618 N.E.2d 82. Under such circumstances, while plaintiff may have a common law negligence claim or a claim pursuant to Section 200 of the Labor Law, any claim pursuant to Section 241(6) is dismissed. *E.g., Comes v. New York State Electric and Gas Corp.*, 82 N.Y.2d 876, 878, 609 N.Y.S.2d 168, 169, 631 N.E.2d 110 (1993) (claim pursuant to Section 241(6) properly dismissed where plaintiffs alleged "only violations of general safety standards of the Industrial Code, not concrete specifications imposing a duty on defendant").

#### B. *Analysis*

In support of the claim pursuant to Section 241(6), Plaintiffs point to three alleged violations of the rules and regulations of

the New York State Department of Labor contained in the New York State Industrial Code. Specifically, Plaintiffs rely on sections 23–1.7(d), 23–1.8(c)(2) and section 23–1.5(c)(2), (3). Section 23–1.7(d) is entitled "slipping hazards," and states that workers shall not be permitted to use any elevated surface which is in a slippery condition. The regulation further states that any foreign substance, including *inter alia*, water, which may cause slippery footing shall be removed, sanded or covered to provide safe footing. 12 NYCRR 23–1.7(d).

■ Plaintiffs also rely on section 23–1.8(c)(2) of the Industrial Code, entitled "Protective apparel." This section provides that all workers who are required to "work or pass" in any wet footing shall be provided with waterproof boots with safety insoles or with pullover boots or rubbers over safety shoes. 12 NYCRR 23–1.8(c)(2). Finally, Plaintiffs rely on section 23–1.5(c)(2) and (3) of the Industrial Code. These sections fall under the heading "general responsibility of employers." *See* 12 NYCRR 23–1.5. The specific subsections relied upon by Plaintiffs state that load carrying equipment must be designed to safely support the loads intended to be carried and that all safety devices, safeguards and equipment in use is to be immediately repaired or removed from the job site if damaged. 12 NYCRR 23–1.5(c)(2)–(3).

At the outset, the court rejects the notion that the last-quoted section of the Industrial Code (section 23–1.5) can be relied upon to support a claim pursuant to Section 241(6). The plain language of these sections make clear they set forth standards in the most general of terms. They therefore do not constitute the "specific, positive commands" contemplated by the Court of Appeals when setting forth the type of regulation that can support a claim of liability under section 241(6). *Ross v. Curtis–Palmer*, 81 N.Y.2d at 504, 601 N.Y.S.2d at 49, 618 N.E.2d 82.

■ The same cannot be said, however, with respect to section 23–1.7(d), which refers to slipping hazards. New York courts have held, consistently, that the standards set forth in this section are sufficiently specific to support a claim pursuant to Section 241(6). *See, e.g., Rizzuto* 91 N.Y.2d at 350–51, 670 N.Y.S.2d at 820, 693 N.E.2d 1068 (section 23–1.7(d) is "precisely the type of 'concrete specification' that *Ross* requires"); *Francis v. Aluminum Co. of America*, 240 A.D.2d 985, 987, 659 N.Y.S.2d 903, 905 (3d Dep't 1997); *Durfee v. Eastman Kodak Co.*, 212 A.D.2d 971, 972, 624 N.Y.S.2d 704, 705 (4th Dep't 1995); *see also Saft v. Tishman Constr. Corp. of Manhattan*, 1999 WL 102766 *6 (S.D.N.Y. February 25, 1999).

In view of the fact that Plaintiff's reliance on section 23–1–7(d) is clear enough to support a Section 241(6) claim, the court need not consider whether the final section relied upon, section 23–1.8(c)(2), is similarly sufficient. *See Rizzuto*, 91 N.Y.2d at 351, 693 N.E.2d 1068 n. *, 670 N.Y.S.2d at 820 n. * (conclusion that one regulation cited by plaintiff is sufficiently specific obviates need to consider other sections relied upon by plaintiff). It does appear, however, that section 23–1.8(c)92 is sufficiently specific to rely upon in support of a Section 241(6) claim. The court observes, however, that to properly rely on this section at trial Plaintiff must come forward with evidence concerning the type of footwear he was wearing and show that the failure to provide him with the proper footwear was the proximate cause of the accident and Plaintiff's injury. *See Francis*, 240 A.D.2d at 987, 659 N.Y.S.2d at 905 ("even if a given regulation sets forth a 'concrete specification,' the regulation must be applicable to the set of facts presented").

For the foregoing reasons, the court denies Defendant's motion to dismiss Plaintiff's claim pursuant to Section 241(6). The court reiterates that a violation of Section 241(6) does not entitle Plaintiff to judgment as a matter of law. It is merely

"some evidence" which the jury may consider on the question of negligence. It is the finder of fact who will ultimately determine whether the negligence of some party caused Plaintiff's injury. *Rizzuto,* 91 N.Y.2d at 349, 670 N.Y.S.2d at 819, 693 N.E.2d 1068; *Saft,* 1999 WL 102766 *6 (S.D.N.Y. February 25, 1999).

## IV. *Section 200 of the Labor Law and Common Law Negligence*

### A. *Legal Principles*

 Section 200 of the Labor Law ("Section 200") is a codification of the common law duty of an owner or general contractor to provide and maintain an safe construction site. *Rizzuto,* 91 N.Y.2d at 352, 670 N.Y.S.2d at 821, 693 N.E.2d 1068; *Comes v. New York State Electric and Gas Corp.,* 82 N.Y.2d 876, 877, 609 N.Y.S.2d 168, 169, 631 N.E.2d 110 (1993). To prevail on such a claim, a plaintiff must show that the defendant had the authority to "control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Rizzuto,* 91 N.Y.2d at 352, 670 N.Y.S.2d at 821, 693 N.E.2d 1068. Thus, Section 200 imposes liability only if the defendant exercised control or supervision over the work and had actual or constructive notice of the allegedly unsafe condition. *Jehle v. Adams Hotel Associates,* 264 A.D.2d 354, 355, 695 N.Y.S.2d 22, 24 (1st Dept.1999). If the defect alleged arose from the contractor's methods and the owner exercised no control over the work site, there is no liability imposed upon the owner under either Section 200 or the common law. *Comes,* 82 N.Y.2d at 877, 609 N.Y.S.2d at 169, 631 N.E.2d 110. Where a jury could rationally find that the named defendant possessed supervisory control over the work being performed sufficient to prevent the unsafe condition, summary judgment for the defendant is properly denied. *Rizzuto,* 91 N.Y.2d at 352, 670 N.Y.S.2d at 821, 693 N.E.2d 1068.

### B. *Analysis*

 Here, Plaintiffs seek to hold the owner of Syosset Lanes liable for injuries sustained as a result of an allegedly dangerous condition on the roof. According to Richard Shannon's testimony, as well as his responses to discovery, it is clear that the claim of negligence is based upon the presence of an improperly patched portion of the roof, upon which Shannon slipped. In support of the motion for summary judgment on this claim, Defendant argues that Plaintiff has come forward with evidence of neither a defect nor notice to Defendant thereof.

Plaintiff's evidence of a defective, slippery patch on the roof comes in the form of his own testimony as well as the deposition testimony of Persaud, Plaintiff's co-worker. In support of a claim of notice, Plaintiff can point only to the fact that an employee of Syosset Lanes knew that Plaintiff and his co-workers were on the roof.

While Plaintiff's proof in support of his Section 200 and common law negligence claims cannot be characterized as anything other than exceedingly weak, the court holds that the claims are sufficient to withstand summary judgment. In view of the court's prior ruling, the parties will be going to trial on the claim pursuant to Section 241(6). The denial of summary judgment merely gives Plaintiff the opportunity to present his claims of defect and notice to the trier of fact at the same time as his Section 241(6) claim. The failure to come forward with sufficient evidence at trial in support of the Section 200 and common law negligence claims will result in dismissal of these claims at the close of Plaintiff's case.

## CONCLUSION

For the foregoing reasons, the defense motion for summary judgment is granted in part and denied in part. Plaintiffs' claim pursuant to Section 240 of the Labor Law is dismissed. Plaintiffs may proceed to trial on their claims pursuant to Sec-

tions 200 and 241(6) of the Labor Law as well as their claim for common law negligence.

SO ORDERED